## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **DOCUMENT OPERATIONS, LLC** | § §  § § | **NO. _____** |
| **Plaintiff** | § § § | **JURY DEMANDED** |
| **v.** | § § | |
| **AOS LEGAL TECHNOLOGIES, INC.; AOS KOREA CORPORATION; AOS HOLDINGS; LEGAL TECH, INC.; LEGAL TECH CO., LTD** | § § § § § § | |
| **Defendants** | § | |

## ORIGINAL COMPLAINT

In this Original Complaint, Plaintiff, Document Operations, LLC, respectfully asserts as follows:

## I.  INTRODUCTION

1. In 2016, Document Operations, LLC—a small legal software development company headquartered in Houston, Texas—conceived and developed "Prpel" a software application designed to assist lawyers in drafting and editing complex legal documents. The centerpiece of "Prpel" is a virtual data room ("VDR"), which allows parties in different physical locations to collaborate virtually in negotiating, drafting,

and editing complex legal documents and to securely share those and other documents.

On August 1, 2017, Document Operations licensed "Prpel" to AOS Legal Technologies, Inc. ("AOS") for the purpose of marketing it to the Japanese legal community. Under the terms of the parties' License Agreement and subsequent Amendments, AOS expressly agreed, *inter alia*, to use its "best efforts" to promote and sell "Prpel" in Japan and Korea; not to compete against "Prpel" in Japan or Korea; and not to misappropriate Document Operations' confidential information, including trad secrets, that the latter disclosed to it.

In blatant and material violation of the parties License Agreement and subsequent Amendments, AOS—acting in conspiracy with one or more Japanese and South Korean affiliates, including AOS Korea Corporation, AOS Holdings, Legal Tech, Inc., and Legal Tech Co., Ltd.—misappropriated Document Operations' confidential information and used it to develop a competing VDR product called "AOS VDR" and/or "Legal Tech VDR" and is now marketing that competing VDR product in both Japan and South Korea, thereby causing Document Operations substantial financial and reputational harm.

AOS and its affiliates have violated the Texas Uniform Trade Secrets Act ("TUTSA") and the Texas common law of breach of contract; fraudulent

inducement to contract; conversion; civil conspiracy; and breach of fiduciary duty. Accordingly, Document Operations now brings this action against AOS and its affiliates to remedy their egregious and ongoing violations of Texas law.

## II. JURISDICTION AND VENUE

2. This Court has original jurisdiction under 28 U.S.C. §§ 1332(a), as this is an action between a citizen of the State of Texas and citizens or subjects of foreign state(s) and the amount in controversy exceeds the sum or value of $75,000, excluding interest and costs.

3. Venue is proper in the Southern District of Texas under 28 U.S.C. 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred here. Additionally, AOS and Document Operations have contractually agreed that venue is proper in this District.

## III. PARTIES

4. Plaintiff, Document Operations, LLC ("Document Operations") is a limited liability corporation incorporated under Texas law and headquartered in Houston, Texas. Document Operations is a successor-in-interest to Requestek, LLC ("Requestek") and to PropelDocs, LLC ("PropelDocs"), both of which were also limited liability corporations incorporated under Texas law and headquartered in Houston, Texas.

5. Defendant, AOS Legal Technologies, Inc. ("AOS") is a corporation that—on information and belief—is incorporated under the laws of Japan and headquartered in Tokyo, Japan.

6. Defendant, AOS Korea Corporation ("AOS Korea"), is a corporation that—on information and belief—is incorporated under the laws of South Korea and is headquartered in Seoul, South Korea.

7. Defendant, AOS Holdings ("AOS Holdings"), is a corporation that—on information and belief—is incorporated under the laws of Japan and is headquartered in Tokyo, Japan.

8. Defendant, Legal Tech, Inc. ("Legal Tech") is a corporation that—on information and belief—is headquartered in Seoul, South Korea.

9. Defendant, Legal Tech Co., Ltd. ("Legal Tech Co.") is a corporation that—on information and belief—is headquartered in Seoul, South Korea.

## IV. FACTS

10. Document Operations is a small legal software development company headquartered in Houston, Texas.

11. Document Operations is a successor-in-interest to Requestek, LLC ("Requestek") and PropelDocs, LLC ("PropelDocs").

12. Matthew ("Matt") Berry is Document Operations and its predecessors'-in-

interest founder and principal owner.

13. In 2016, Berry—a Houston resident—and his Requestek software development team conceived and developed a software application to assist lawyers in drafting, negotiating, and editing complex legal documents and securely share files. Initially, they named their software application, "Prpel."[1] *See* Declaration of Matthew Berry, at para. 11.

14. The centerpiece of "Prpel" is a virtual data room ("VDR"). A VDR allows parties in different physical locations to collaborate virtually in negotiating, drafting, and editing of complex legal documents and securely share to those and other documents. *Id.*, at para. 13.

15. Berry and his colleagues expended thousands of hours and hundreds of thousands of dollars in developing "Prpel," in general, and its VDR function, in particular. *Id.*, at para. 14.

16. On or about February 1, 2017 Berry and members of "Prpel's" software development team attended a legal technology conference in New York to market "Prpel." *Id.*, at para. 15.

17. During the conference, Takamasa Sasaki ("Sasaki")—President of AOS

---

[1]Subsequently, they changed the name of "Prpel" to "Propel" and, then, to "Doc Ops"—its current name. *See* Declaration of Matthew Berry (Exhibit A), at para. 12. For consistency purposes, Document Operations' VDR product is referred to as "Prpel" throughout this Complaint.

Legal Technologies, Inc. ("AOS"), a legal technology company headquartered in Tokyo, Japan—approached Berry and expressed interest in selling "Prpel" in Japan. Sasaki further expressed interest in having AOS serve as "Prpel's" *exclusive* representative for the purpose of marketing "Prpel" in Japan and Korea. *Id.*, at paras., 16, 17.

18. Berry and Sasaki then commenced negotiations for AOS to purchase from Requestek an exclusive license to market "Prpel" in Japan and Korea.

19. On August 1, 2017, Requestek—through Berry—and AOS—through Sasaki—executed a "Requestek License Agreement" ("RLA"). *Id.*, at para. 19, at Exhibit 1

20. The RLA provides, in relevant part:

> 2.1 **Appointment.** Requestek hereby appoints the Client, during the term of this agreement, as a) an exclusive provider of the Service to Customers headquartered in the Territory [Korea and Japan]; and b) Requestek's exclusive and independent representative solely for the purpose of referring potential customers headquartered in the Territory [Japan and Korea] to Requestek for the possible license by Requestek of Products directly to such customers.
>
> ***
>
> [AOS] shall conduct business in a manner that reflects favorably at all times on the Products and

6

the good name, goodwill, and reputation of
Requestek and avoid, deceptive, misleading or
unethical practices that are or might be detrimental
to Requestek or Requestek products or services.

3.1   **License to the Software Object Code.** Subject to
the terms and conditions set forth herein,
Requestek hereby grants to Client a non-exclusive,
worldwide license to install the number of
Instances set out in Exhibit A (or later added via
an addendum) solely on servers at the specified
Locations and to use and display the Software
solely for the purpose of providing Services to
Customers…

3.3.   **Prohibitions.** Client has no other rights to the
Software and, in particular, may not (i) distribute,
copy, modify, create derivatives of, decompile, or
reverse engineer the Software except as permitted
by applicable law; (ii) activate any Software
delivered in an un-activated state; or (iii) allow
others to engage in same. Title to the Software and
all copyrights and other intellectual property rights
in the Software shall at all times reside with
Requestek…

4.1   **Prices.** Client shall pay Requestek the prices
described in Exhibit A for its use of the Products
to provide the Service to Customers…

4.5.   **General Duties.** Client shall use its best efforts to
promote the Products and maximize the sale of the
Products in the Territory. Client shall also provide
reasonable assistance to Requestek in promotional
activities of Requestek with respect to the
Products.

7

4.9     **Conflict of Interest**. Client warrants to Requestek that it does not currently represent or promote, nor is it developing, any lines or products that compete with the Products. During the term of this Agreement, Client shall not represent, promote, develop or otherwise try to sell within the Territory any lines or products that, in Requestek's judgment, compete with the Products covered by this Agreement...

10.1    **Term.** This Agreement becomes effective on the Effective Date and will continue for a term of one (1) year, unless sooner terminated under this Section 10 (together with any extended term, the **"Term"**)…

11.     **Confidential Information.** Each party acknowledges that it will acquire information and materials from the other party and knowledge about the business, products, customers, clients and suppliers of the other party and that all such knowledge, information and materials acquired, including the terms and conditions of this Agreement and the Software, are and will be trade secrets and confidential and proprietary information of the disclosing party (collectively, **"Confidential Information"**)…For the term of this Agreement and for a period of three (3) years following termination or expiration of this Agreement, each Party agrees to use reasonable efforts to hold all such Confidential Information in confidence, and not to disclose it to others or use it except for purposes of carrying out this Agreement.

12.     **Intellectual Property Rights.** Client agrees and acknowledges that Requestek, its suppliers and its licensors are the owners of all right, title, and

interest in and to the Property (including the Software), any Custom Work provided hereunder and all intellectual property in the foregoing, and that Client shall not obtain or claim any ownership interest in the Products and all Intellectual Property therein. Client agrees and acknowledges that the Products contain the valuable trade secrets and confidential information of Requestek, its suppliers and its licensors, which have been developed at great expense. Client shall not obscure, alter or remove any patent, copyright, trademark, or service mark marking, or legend contained on or in the Products. Except as expressly permitted in this Agreement, Client shall (i) not use the Products, or permit any third party to make such use (ii) in no way copy, distribute or transmit all or any portion of the Products or the Software, and (iii) have no other rights or licenses with respect to the Products and the Software, or any Intellectual Property therein. Except as explicitly permitted in this Agreement, Client shall not cause or permit the disclosure, copying, renting, licensing, sublicensing, leasing, dissemination, transfer or other distribution of the Products or the Software by any means or in any form, without the prior written consent of Requestek. Client shall not reverse engineer, decompile or disassemble the Software or otherwise reduce the Software to human readable form.

*Id.*, at Exhibit 1.

21. The RLA defined "Products" as: "Prpel Data Room." *Id.*, at Exhibit 1, at

Exhibit A.

9

22. In November, 2017 AOS and Requestek executed an "Addendum" to the RLA, specifying that "AOS Korea Corporation"—which, on belief, is headquartered in Seoul, South Korea—is an "additional location" under the RLA: meaning, that AOS had a an exclusive license to market "Prpel" in South Korea. *Id.*, at para. 20, at Exhibit 2.

23. On August 28, 2018, Requestek and AOS executed "Amendment No. 2 To License Agreement," extending AOS' license term for one year until July 31, 2019. This Amendment further provided that "[a]ll other terms and conditions of the [RLA] shall remain in full force and effect." *Id.*, at para. 21, at Exhibit 3.

24. On August 19, 2019, Requestek and AOS executed "Amendment No. 3 To License Agreement" ("RLA Amendment No. 3") extending AOS' license term for one year until July 31, 2020. *Id.*, at para. 22, at Exhibit 4. RLA Amendment No. 3 further provided that "[a]ll other terms and conditions of the [RLA] shall remain in full force and effect." *Id.*, Exhibit 4, at para. 3.

25. After AOS executed the RLA and the Amendments thereto, Berry and "Prpel's" software development team provided AOS with extensive confidential information—as that term is defined under paragraph 11 of the RLA—and trade secrets—as that term is defined under the Texas Uniform Trade Secrets Act, Tex. Civ. P. & Rem. Code 134A *et seq.*—regarding "Prpel," including "Prpel's" VDR

function. That confidential information and those trade secrets included application workflow diagrams; database schemas; feature list; priority lists; internal discussion notes and documents; sales collateral, including PowerPoint presentations; and other Document Operations-created sales materials. *Id.*, at para. 23.

26. After AOS executed the RLA, Berry and his team also devoted extensive time and hundreds of thousands of dollars adapting and modifying "Prpel" to meet AOS' requested specifications for the Japanese market and training AOS' staff to market "Prpel." *Id.*, at para. 24.

27. Beginning in or about January 1, 2018 AOS—whether acting alone or in conspiracy with AOS Holdings, AOS Korea, Legal Tech, and Legal Tech. Co.—misappropriated "Prpel's" software and other Document Operations confidential information that Document Operations had disclosed to AOS under the RLA. AOS, AOS Holdings, AOS Korea, Legal Tech, and/or Legal Tech. Co then used the "Prpel" software and confidential information they pirated from Document Operations to develop a VDR product that not only competes with "Prpel" but contains some of "Prpel's" unique and proprietary functions, including the following: ability to copy folder structures from local file systems into web VDR; ability to view different file formats within the VDR system; ability to quickly

upload and download large documents and folders; file and folder based permissions per user; detailed activity tracking and reporting; two factor authentication; multi-language support; document tagging; adding comments for collaborative purposes; keyword search and history; document watermarking; similar look and feel to email; secure document sharing; and OCR support for image based documents (no text). *Id.*, at paras. 25-29.

28. AOS, AOS Holdings, AOS Korea, Legal Tech, and/or Legal Tech. Co have marketed their competing VDR in Japan and Korea under the names "AOS VDR" and "Legal Tech VDR"—to the substantial financial detriment of "Prpel" and Document Operations. *Id.*

29. In furtherance of its plan/conspiracy to misappropriate Document Operations' confidential information and trade secrets regarding "Prpel" and develop a competing VDR product, AOS has not used its best efforts to promote and maximize the sale of "Prpel" within Japan and Korea.

30. Accordingly, on January 24, 2020, Berry—on behalf of Document Operations—transmitted an email to Sasaki that stated, in relevant part:

> I am writing you directly as it was just brought to my attention that you have developed and are launching your own AOS VDR. I wanted to find out directly from you if this is true as we invested a lot of time and money supporting you over the past several years including developing a mobile application and many other

customizations which you requested.

*Id.*, at para. 32, at Exhibit 6.

31. In a February 23, 2020 response to Berry's January 24, 2020 email, Sasaki admitted that AOS was *"planning to sell"* a competing VDR in Japan under the brand name *"AOS VDR." Id.*, at para. 33, at Exhibit 7.

32. Specifically, in his February 23, 2020 response to Berry, Sasaki stated, in relevant part:

> Here is a description of the new product you pointed out…***The product "AOS VDR"*** (hereinafter referred to as "the Product") was developed by Legaltech Corporation of Korea (which has no controlling relationship with the AOS Group). ***AOS Technologies has translated it into Japanese, and the Japanese version retains its intellectual property rights, and we were planning to sell this product…I hope that you understand our only option to continue current VDR business was simply to take in even not good product and translate into Japanese.***

*Id.* (emphasis added).

33. On or about March 6, 2020, Sasaki transmitted a second email to Berry, in which he (Sasaki) further acknowledged that AOS was in the process of developing a "new VDR" application and that AOS' technical team intended to "download" data into the "new VDR." Some of the "data" that AOS planned to download into the "new VDR" was *Document Operations'* confidential

13

information/trade secrets related to "Prpel." *Id.*, at para. 34, at Exhibit 8.

34. On March 11, 2020, Document Operations—through Berry—tendered a "cease and desist" letter to AOS, through Sasaki. *Id.*, at para. 35, at Exhibit 9.

35. To date, AOS has failed to comply with Document Operations' "cease and desist" demand and, in fact, is continuing its illegal conduct. *Id.*, at para. 37.

36. On April 25, 2020, Sasaki transmitted another email to Berry, in which he (Sasaki) ***again*** acknowledged that AOS was in the process of developing a new VDR application. *Id.*, at para. 36, at Exhibit 10.

37. Throughout the term of the RLA, AOS has failed to pay Document Operations all licensing fees required under RLA paragraph 4.1.

38. At all relevant times, AOS, AOS Holdings, AOS Korea, Legal Tech, and Legal Tech Co. acted willfully, maliciously, intentionally, and/or in bad-faith in violating Document Operations' legal rights.

39. AOS, AOS Holdings, AOS Korea, Legal Tech, and Legal Tech Co.'s illegal conduct has caused Document Operations substantial economic and non-economic damages in excess of $75,000, excluding interest and costs. These damages include, but not limited, to the following: lost revenue; lost profit; lost licensing fees; and lost commissions.

40. All conditions precedent to the filing of this action have been performed

or have occurred.

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION: BREACH OF CONTRACT

41. Document Operations incorporates the factual allegations asserted in paragraphs 1 through 40, *supra*, and further asserts as follows.

42. AOS materially breached the RLA in numerous material respects, including, but not necessarily limited to, the following.

43. AOS materially breached its contractual obligation to "conduct business in a manner that reflects favorably at all times on the Products and the good name, goodwill, and reputation of [Document Operations] and avoid, deceptive, misleading or unethical practices that are or might be detrimental to [Document Operations] or [Document Operations] products or services." *See* RLA, at para. 2.1.

44. AOS materially breached its contractual obligation not to "distribute, copy, modify, create derivatives of, decompile, or reverse engineer ["Prpel"], except as permitted by applicable law; (ii) activate any Software delivered in an un-activated state; or (iii) allow others to engage in same." *See* RLA, at para. 3.3.

45. AOS materially breached its contractual obligation to pay Document Operations the contractually obligated price for its use of Prpel. *See* RLA, at para.

4.1.

46. AOS materially breached its contractual obligation to "use its best efforts to promote ["Prpel"] and maximize the sale of ["Prpel"] in [Japan and Korea]." *See* RLA, at para. 4.5.

47. AOS materially breached its contractual obligation not to "represent, promote, develop or otherwise try to sell within the Territory any lines or products that, in [Document Operations] judgment, compete with ["Prpel"]..." *See* RLA, at para. 4.9.

48. AOS materially breached its contractual obligation to "use reasonable efforts to hold all such Confidential Information in confidence, and not to disclose it to others or use it except for purposes of carrying out this Agreement." *See* RLA, at para. 11.

49. AOS materially breached its contractual obligation that, "except as expressly permitted in the [RLA]," it would "(i) not use the Products, or permit any third party to make such use (ii) in no way copy, distribute or transmit all or any portion of ["Prpel"], and (iii) have no other rights or licenses with respect to ["Prpel"], or any Intellectual Property therein. Except as explicitly permitted in [the RLA], [AOS] shall not cause or permit the disclosure, copying, renting, licensing, sublicensing, leasing, dissemination, transfer or other distribution of

["Prpel"] by any means or in any form, without the prior written consent of Requestek. [AOS] shall not reverse engineer, decompile or disassemble the Software or otherwise reduce the Software to human readable form." *See* RLA, at para. 12.

50. At all relevant times, AOS acted willfully, maliciously, intentionally, and/or in bad-faith in violating Document Operations' legal rights.

51. AOS's illegal conduct, as alleged *supra*, proximately caused Document Operations significant monetary and non-monetary damages.

## SECOND CAUSE OF ACTION: TEXAS UNIFORM TRADE SECRETS ACT

52. Document Operations incorporates the factual allegations asserted in paragraphs 1 through 40, *supra*, and further asserts as follows.

53. Defendants engaged in a "willful and malicious" "misappropriation" of Document Operations' "trade secret(s)," as those terms are defined under Tex. Civ. P. & Rem. Code section 134A.

54. At all relevant times, Defendants acted willfully, maliciously, intentionally, and/or in bad-faith in violating Document Operations' legal rights.

55. Defendants' illegal conduct, as alleged *supra*, has caused Document Operations significant monetary and non-monetary damages.

## THIRD CAUSE OF ACTION: CONVERSION

56. Document Operations incorporates the factual allegations asserted in paragraphs 1 through 40, *supra*, and further asserts as follows.

57. Defendants—without Document Operations' authorization—wrongfully assumed and exercised dominion and control over Document Operations' property—including, but not limited to, its software, confidential information, and trade secrets underlying the "Prpel" VDR—to the exclusion of, or inconsistent with, Document Operations' rights to that property.

58.    At all relevant times, Defendants acted willfully, maliciously, intentionally, and/or in bad-faith in violating Document Operations' legal rights.

59. Defendants' illegal conduct, as alleged *supra*, proximately caused Document Operations significant monetary and non-monetary damages.

## FOURTH CAUSE OF ACTION: FRAUDULENT INDUCEMENT TO CONTRACT

60. Document Operations incorporates the factual allegations asserted in paragraphs 1 through 40, *supra*, and further asserts as follows.

61. In executing the RLA and the Amendments thereto, AOS made material misrepresentations to Document Operations and its predecessors-in-interest that were false when made, including that it would fully comply with the terms of the

RLA and the Amendments thereto.

62. At the time AOS made these representations, AOS knew those representations were false.

63. At the time AOS made these false representations, AOS did so with the intent and foreseeability that Document Operations would rely upon them.

64. Document Operations relied upon AOS' false representations to its detriment.

65. At all relevant times, AOS acted willfully, maliciously, intentionally, and/or in bad-faith in violating Document Operations' legal rights.

66. AOS's illegal conduct, as alleged *supra*, proximately caused Document Operations significant monetary and non-monetary damages.

**FIFTH CAUSE OF ACTION: CIVIL CONSPIRACY**

67. Document Operations incorporates the factual allegations asserted in paragraphs 1 through 40, *supra*, and further asserts as follows.

68. Defendants entered into a combination that sought to accomplish an object or course of action, including the misappropriation of Document Operations' confidential information, trade secrets, and software to develop a competing VDR product.

69. Defendants reached a meeting of the minds on the object or course of

19

action.

70. Defendants engaged in one or more unlawful, overt acts are taken in pursuance of the object or course of action.

71. At all relevant times, Defendants acted willfully, maliciously, intentionally, and/or in bad-faith in violating Document Operations' legal rights.

72. Defendants' illegal conduct, as alleged *supra*, proximately caused Document Operations significant monetary and non-monetary damages.

## SIXTH CAUSE OF ACTION: BREACH OF FIDUCIARY DUTY

73. Document Operations incorporates the factual allegations asserted in paragraphs 1 through 40, *supra*, and further asserts as follows.

74. A fiduciary relationship existed between Document Operations and AOS.

75. AOS breached its fiduciary duty to Document Operations.

76. AOS's breach of its fiduciary duty to Document Operations, as alleged *supra*, has caused Document Operations significant monetary and non-monetary damages.

77. At all relevant times, AOS acted willfully, maliciously, intentionally,

## VI. PRAYER FOR RELIEF

Accordingly, Plaintiff, Document Operations, LLC, respectfully moves this Honorable Court—after trial by jury on all issues so triable—for the following relief:

1. Declaratory Judgment that AOS Legal Technologies, Inc., AOS Korea Corporation, AOS Holdings, Legal Tech, Inc., and/or Legal Tech Co., Ltd. violated its rights under the Texas Uniform Trade Secrets Act; the Texas common law of breach of contract; the Texas common law of conversion; the Texas common law of fraudulent inducement to contract; the Texas common law of breach of fiduciary duty; and/or the Texas common law of civil conspiracy.

2. Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction enjoining AOS, AOS Korea Corporation, AOS Holdings, Legal Tech, Inc., and Legal Tech Co., Ltd. from a) misappropriating its trade secrets; b) not holding all its Confidential Information in confidence, disclosing it to third parties, and/or using it for any purpose not permitted under the RLA and Amendments thereto; c) representing, promoting, developing or otherwise trying to sell within Japan or South Korea any lines or products that, in Document Operations' judgment, competes with "Prpel"; d) causing or permitting the disclosure, copying, renting, licensing, sublicensing, leasing, dissemination, transfer or other

distribution of "Prpel" by any means or in any form, without the prior written consent of Document Operations e) reverse engineering, decompiling or disassembling the "Prpel" software or otherwise reducing the software to human readable form; f) failing to use its best efforts to promote "Prpel" and maximize the sale of "Prpel" in Japan and Korea; g) conducting business in a manner that reflects unfavorably on Document Operation and the good name, goodwill, and reputation of Document Operations; h) engaging in deceptive, misleading or unethical practices that are or might be detrimental to Document Operations or Document Operations' products or services;

3. Actual damages;

4. Exemplary damages;

5. Reasonable royalty for the unauthorized disclosure or use of Document Operations' trade secrets;

6. Reasonable attorney's fees and costs;

7. Pre-judgment and post-judgment interest; and

8. All other relief, whether at law or in equity, to which it is justly entitled.

Respectfully submitted,


**/s/ Scott Newar**
SCOTT NEWAR
S.D. Texas Bar Number 19191
440 Louisiana, Suite 900
Houston, Texas 77002
Telephone: (713) 226-7950
Fax: (713) 226-7181 (Fax)
E-Mail: newar@newarlaw.com

ATTORNEY-IN-CHARGE
FOR PLAINTIFF,
DOCUMENT OPERATIONS, LLC