United States District Court
Southern District of Texas

**ENTERED**

November 12, 2020

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DOCUMENT OPERATIONS LLC, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:20-CV-1532 |
| | § | |
| AOS LEGAL TECHNOLOGIES, INC; | § | |
| AOS KOREA CORPORATION; AOS | § | |
| HOLDINGS;LEGAL TECH INC;LEGAL | § | |
| TECH CO.LTD. | § | |
| | | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Document Operations' Motion for Alternative/Substituted Service of Process on Defendants and Motion to Extend the Deadline for Service of Process. Dkt. 48. Having carefully reviewed the motion, response, reply, all submissions, and the applicable law, the Court finds that the motions should be **GRANTED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This action arises from the creation and licensing of a software program known as "Prpel" by Plaintiff Document Operations LLC ("Document Operations"). Document Operations has sued  Defendant AOS Legal Technologies, Inc. ("AOS") and its Japanese and Korean affiliates,  Defendants AOS Korea, AOS Holdings, Legal Tech Inc. and Legal Tech Co. Ltd. for violating the terms of their licensing agreements to market "Prpel" in Japan and Korea and for using Document Operations' confidential information

to develop a competing program that defendants are now selling in these markets. Among other relief, Document Operations seeks an injunction to prohibit AOS's alleged misconduct.

Takamasa Sasaki ("Sasaki") is the president of AOS. The complaint identifies Defendant AOS Legal Technologies "upon information and belief" as a Japanese company headquartered in Tokyo, Japan. Dkt. 3 at para. 5. It is undisputed that AOS, through Sasaki and its lead counsel C. Mark Stratton ("Stratton"), has knowledge of both this lawsuit and its responsibilities as a party to this action. The record reflects that, prior to the first hearing for injunctive relief scheduled in this case, Sasaki received copies of all pleadings and notices regarding hearings and responsive pleadings deadlines that had been filed to date directly from Document Operations' counsel, Scott Newar ("Newar"). These pleadings were sent to Sasaki at sasaki@aos.com—an email address that Sasaki has long used to communicate with Document Operations. Dkt. 48 at Exhibit E; Dkt. 1, Exhibit A, at paras. 32–36 and related exhibits. After receiving these pleadings, AOS hired Stratton to represent them in this matter.[1]

Newar then sent Stratton, as counsel for AOS, Plaintiff's First Amended Complaint and Fed. R. Civ. P. 4 "Waiver of The Service of Summons" forms for all Defendants. Dkt. 48, Exhibit E at para. 4. FedEx delivered these documents to Stratton's

---

[1] On May 27, 2020, at 11:15 a.m.—fifteen (15) minutes before the first hearing for injunctive relief was set to begin, Stratton sent an e-mail to Newar stating, in relevant part:
I wanted to let you know that AOS Legal Services is represented by counsel. Please refrain from contacting them directly and your client should also refrain from doing so.
Stratton sent this email to Newar from the following e-mail address: strattonm@gtlaw.com. Despite receiving notice, neither Stratton nor anyone else appeared on behalf of AOS at the hearing. Dkt. 48, at para. 10.

law firm, Greenberg Traurig LLP, 300 W. 6th Street, Suite 2050, Austin, Texas 78701, on or about June 8, 2020. Dkt. 48, at para. 11 and Exhibit E at para. 5. To date, AOS and Stratton have not returned an executed "Waiver of The Service of Summons" form for any defendant, nor have they offered any explanation to the Court for their failure to do so. Dkt. 48, Exhibit E at para. 6.

Shortly thereafter, in another attempt to effect service, Document Operations identified Sasaki as president of AOS Legal Technologies, Inc., a Delaware corporation with an office address listed as 45 Rockefeller Plaza, Suite 2035, New York, New York 10111. On or about June 18, 2020, Document Operations sent the Texas Secretary of State a copy of Plaintiff's First Amended Complaint and a Fed. R. Civ. P. 4 Summons form to be served on AOS Legal Technologies, Inc. at the New York office. Dkt. 48, Exhibit E at para. 8. However, on June 23, 2020, AOS Legal Technologies, Inc. a Delaware corporation, filed a "Certificate of Dissolution" with the Delaware Secretary of State and refused service of process from the Texas Secretary of State. Dkt. 48, Exhibit F, G, and H. On July 2, 2020, AOS Legal Technologies, Inc., a Delaware corporation notified the State of New York that it was an "inactive" corporation in that state. Dkt. 48, Exhibit B. On July 7, 2020, AOS Legal Technologies, Inc. notified the State of California that it had "surrendered" its active corporate status in that state. Dkt. 48, Exhibit I.

In this case the parties are at loggerheads over the method to properly serve the complaint and summons on AOS. Frustrated in its attempts to timely serve defendants, Document Operations now requests that the Court order alternative service on AOS by

serving it with process via e-mail to Sasaki and/or Stratton. Dkt. 48 at p. 10.[2] In response,

AOS argues that it is a Japanese corporation and as such it has an absolute right to insist

on service of process through strict compliance with the Convention on

the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial

Matters, Nov. 15, 1965, 20 U.S.T. 361 (the "Hague Convention") before it must answer

this suit. AOS denies that it is a Delaware corporation and that it ever had offices in the

United States.[3] Assuming that AOS is Japanese corporation and is not operating in the

United States, the record reflects that AOS's arguments are at best unmeritorious and, at

worst, made in bad faith to thwart Document Operations' attempts to move this action

forward.

## II.    ANALYSIS

In this case, AOS does not have an absolute right to insist on service of process

through strict compliance of the Hague Convention before it must answer this suit.

Pursuant to Rule 4(h)(2), a corporation in a foreign country may be served in any manner

prescribed for an individual by Rule 4(f). Under Rule 4(f)(1), an individual may be

served at a place outside a United States judicial district by an internationally agreed

means of service such as the Hague Convention. However, Rule 4(f)(3) also permits

---

[2] Although Document Operations' motion cites Federal Rule of Civil Procedure 4(e) as one source of authority for the relief requested, the briefing from both parties makes clear that the relief could be sought under both Rules 4(e) and (f). Dkt. 48, at pp. 13–18; Dkt. 55, at pp. 15–21. The Court finds that under the facts of this case, Rule 4(f) is the most appropriate rule for considering Document Operations' motions.

[3] AOS also argues that Delaware corporation identified by Document Operations cannot be served with process because it (1) has been dissolved and (2) is not a proper party to this lawsuit. Dkt. 55, at pp. 11–14.

service "by other means not prohibited by international agreement, as the court orders."
*See e.g., Water Splash Inc. v. Menon*, 137 S. Ct. 1504, 1507 (2017). Because the Court
cannot order a form of service that is prohibited by Hague Convention, the Court must
first address the issue of whether the form of service requested by Document Operations
is prohibited the Convention.

### a. Prohibition by International Agreement

### 1. The Hague Convention

Court-ordered service on AOS, as an alleged Japanese corporation, by either
regular mail or e-mail is not prohibited by the Hague Convention. The Hague Convention
is an international treaty formulated to provide a simpler way to serve process abroad and
to assure that defendants sued in foreign jurisdictions would receive actual and timely
notice of suit. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988).
The primary means of service under the Hague Convention is through a receiving
country's "central authority," which receives requests for service, arranges for service,
and returns proofs of service. *Id.* at 698–99. Service through this means is governed
primarily by Article 5 and is allowed as a means of service under Fed. R. Civ. P. 4(f)(1).

Article 10 provides that the Hague Convention shall not interfere with other
methods of service, such as service through judicial officers and officials. Until recently,
courts were divided as to whether Article 10(a) allowed service by mail through postal
channels. The United States Supreme Court has now clarified this issue and held that

Article 10(a) of the Hague Convention does not prohibit service of process by mail in countries that have not objected to service by mail. *Water Splash,* 137 S. Ct. at 1513. Federal courts have repeatedly held that Japan, a Hague Convention signatory has not objected to mail service under Article 10(a) and, therefore, service on a defendant in Japan via regular mail is permissible. *Hawkins v. Bank of Am., N.A.*, No. 17-cv-01954-BAS-AGS, 2018 WL 1616941, at \*2 (S.D. Cal. Apr. 4, 2018) (collecting cases).

Similarly, the Hague Convention does not affirmatively authorize, nor does it prohibit, service by email. *See Luxottica Grp. S.p.A. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, 391 F. Supp. 3d 816, 822 (N.D. Ill. 2019) ("The Convention . . . does not speak directly to service by email and other electronic means."); *Habas Sinai Ve Tibbi Gazlar Istihsal A.S. v. Int'l Tech. & Knowledge Co.*, Civil Action No. 19-608, 2019 WL 7049504, at \*3 (W.D. Pa. Dec. 23, 2019) (same); *Bazarian Int'l Fin. Assocs. v. Desarrollos Aerohotelco, C.A.*, 168 F. Supp. 3d 1, 17 (D.D.C. 2016) (same). There is no indication from the parties' briefs (or the Court's own research) that Japan  has stated any specific objection to service by email or, more generally, that it has not consented to the means of service listed in Article 10 of the Convention.  Accordingly, the Court finds that since the Hague Convention does not prohibit alternate service on AOS by regular mail, it likewise does not prohibit service by e-mail as requested by Document Operations. Cf. *Luxottica*, 391 F. Supp. 3d at 827; *Habas Sinai*, 2019 WL 7049504, at \*3 (holding that service via email on residents of China and Turkey, respectively, was deemed insufficient due to those countries' objections to Article 10 service through postal channels.)

### b. Service Directed by the Court

Next the Court must determine the most appropriate method of service under the facts of this case. "The decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the 'sound discretion of the district court.'" *Strabala v. Zhang*, 318 F.R.D. 81, 114 (N.D. Ill. 2016) (collecting cases). Alternate service pursuant to Rule 4(f)(3) is appropriate when, for example, "there is a need for speed that cannot be met by following the Hague Convention methods." *Id.*

In this case, it is undisputed that service on AOS through Articles 5 and 10 of the Hauge Convention would take months to complete. Document Operations argues that, without alternate service by regular mail and e-mail, during the intervening months it would be prevented from enforcing an injunction to stop AOS from causing irreparable harm to Document Operations' business. The Court agrees. This argument is especially persuasive in light of AOS's knowledge of this lawsuit, its responsibilities as a party to this action, its prior conduct, as noted above, of thwarting service on possible culpable domestic corporate defendants, and its counsel's refusal to even speak to the Court by telephone regarding service on AOS.[4]

---

[4] AOS' counsel Stratton does not dispute that he has received copies of all notices of hearings (including the notices for the injunction hearings) and pleadings filed in this case, including Plaintiff's First Amended Complaint and Fed. R. Civ. P. 4 "Waiver of the Service of Summons" forms for all defendants. Despite several phone calls from the Court and the repeated efforts of plaintiff's counsel, Stratton declined to even speak with the Court about the alleged lack of proper service and personal jurisdiction over AOS in this case *until after* the Court had granted the injunctive relief sought by plaintiff.

AOS argues that the Court should not consider any form of alternative service under Rule 4(f) other than what is prescribed by the Hague Convention because Document Operations has not first attempted to serve AOS under the Hague Convention. Dkt. 55 at 20.  The Court finds this argument unpersuasive.  The plain language of the rule does not require a plaintiff to attempt service under Rule 4(f)(1) before seeking authorization to use an alternative means of service under Rule 4(f)(3). As numerous courts have held, a plaintiff "is not required to first attempt service through the Hague Convention under Rule 4(f)(1) before asking this Court to allow alternate means." *Monco v. Zoltek Corp.*, No. 17-cv-6882, 2018 WL 3190817, at *4 (N.D. Ill. Apr. 24, 2018)  "By its plain terms, Rule 4(f)(3) does not require exhaustion of all possible methods of service before a court may authorize service by 'other means,' such as service through counsel and by email."*AngioDynamics, Inc. v. Biolitec, AG*, 780 F.3d 420, 429 (1st Cir. 2015); *see also Enovative Techs., LLC v. Leor*, 622 Fed. App'x 212, 214 (4th Cir. 2015) ("Rule 4(f)(3) does not denote any hierarchy or preference for one method of service over another."); *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002) ("[C]ourt-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) or Rule 4(f)(2)."); *Bazarian Int'l Fin. Assocs., L.L.C. v. Desarrollos Aerohotelco, C.A.*, 168 F. Supp. 3d 1, 16 (Dist. D.C. 2016) (holding that a plaintiff is not required to first demonstrate "a minimum threshold effort to serve Defendants via . . . the Hague Convention" before proceeding under Rule 4(f)(3)).

Due process concerns are also not implicated here. One of the principle purposes of the Hague Convention is to ensure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988). Here, service under the strict terms of the Hague Convention is not required to effectuate this purpose. It is undisputed that AOS, through Sasaki and its lead counsel Stratton, has knowledge of both this lawsuit and its responsibilities as a party to this action. AOS appears to be a sophisticated company that has subsidiaries or related companies in multiple countries, including until very recently the United States. It has hired U.S. counsel to represent it in this case and thus is aware of the U.S. legal system. In similar cases, courts have approved email service or service on the defendant's counsel located in the district. *See Bazarian*, 168 F. Supp. 3d at 15–17 (explaining that the court could direct service by e-mail even if the country objects to Article 10, or on U.S. counsel without requiring any specific authorization by the defendant for the recipient to accept service on its behalf) (collecting cases); *see also Santiago v. Anderson*, 496 F. App'x 630, 635 (7th Cir. 2012) (citing case for the proposition that "Rule 4(f)(3), which permits service in [a] foreign country 'as the court orders' so long as chosen method comports with international agreements, imparts broad discretion and would allow for service by regular mail and e-mail."). Accordingly, service of process on AOS by regular mail to Stratton at his law office and by e-mail to both Stratton and Sasaki at addresses they have been using throughout this litigation is warranted by Rule 4(f). *See Bazarian*, 168 F. Supp. 3d at 15 (explaining that Rule 4(f) is concerned with providing a

method of service that is reasonably calculated to "notif[y] a defendant of the commencement of an action against him.")

### IV.   CONCLUSION

The Motion for Alternative/Substituted Service of Process on Defendants and the Motion to Extend the Deadline for Service of Process (Dkt. 48) are **GRANTED**. "In situations like this, service on a foreign corporation's counsel in the United States is an effective and reasonable method, and is not prohibited by the Hague Convention. Xilinx, Inc. v. Godo Kaisha IP Bridge 1, 246 F. Supp. 3d 1260, 1264 (D. Ore. 2017). Service of the complaint is ordered on Sasaki and on Stratton, AOS's lead counsel. Document Operations should e-mail the complaint to Sasaki at sasaki@aos.com and to Stratton at strattonm@gtlaw.com. Document Operations will also send a hard copy by registered mail through the United States Postal Service to Stratton's law office. Plaintiff has 30 days from the date this order is signed to complete service and file proof of service with the Court.

SIGNED at Houston, Texas, this 12th day of November, 2020.

_George C. Hanks Jr_
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE