UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DOCUMENT OPERATIONS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:20-CV-1532 |
| | § | |
| AOS LEGAL TECHNOLOGIES, INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION

In its order dated June 23, 2021, the Court granted Plaintiff Document Operations, LLC's Motion for Alternative/Substituted Service of Process and Motion to Extend Deadline for Service of Process. (Dkt. 86). This Memorandum Opinion follows that order.

### I. FACTUAL BACKGROUND

This action arises from the creation and licensing of a software program known as "Prpel" by Plaintiff Document Operations LLC ("Document Operations"). Document Operations has sued among others Defendant AOS Legal Technologies, Inc. ("AOS") for violating the terms of their licensing agreements to market "Prpel" in Japan and Korea and for using Document Operations' confidential information to develop a competing program that AOS is now selling in these markets.[1] The licensing agreements at issue

---

[1] To put "confusion to rest" regarding its identity and place of incorporation, AOS now identifies itself in this lawsuit as "LegalTech Japan" a corporation "formerly known as AOS Legal Technologies, Inc." (Dkt. 65 at p. 1, fn. 1).

were signed by Takamasa Sasaki ("Sasaki") as "President" of AOS which represented itself in the agreement to be a Japanese limited liability corporation. (Dkt. 55-1 at pp. 2, 10).

Shortly after this action was filed, Sasaki received via e-mail copies of all pleadings and notices filed in this case from Document Operations' counsel, Scott Newar ("Newar"). (Dkt. 48 at Ex. E; Dkt. 1-A, at paras. 32–36 and related exhibits). After Sasaki received these pleadings, attorney C. Mark Stratton ("Stratton") with the U.S. law firm of Greenberg Traurig was hired to represent AOS in this matter. (Dkt. 55-4 at 2:13–15).

On or about June 8, 2020, Newar then sent Stratton the summons, the live complaint, and a waiver of summons form via FedEx. (Dkt. 48, at para. 11 and 48-E at paras. 4 & 5). Stratton did not return an executed waiver of summons form. (Dkt. 48-E at para. 6). Instead, Stratton informed Newar that, as a Japanese corporation, his client, AOS, did not have to appear in this case until after it had been served with process pursuant to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361 (the "Hague Convention" or "Convention").

Document Operations then discovered the existence of a company named AOS Legal Technologies, Inc.—the exact same name as AOS—incorporated in Delaware ("AOS Delaware"). This company listed its office address as 45 Rockefeller Plaza, Suite 2035, New York, New York 10111. The corporate legal documents identified Sasaki as

"Chief Executive Officer" of AOS Delaware and listed an address for him in New York. On June 18, 2020, Document Operations filed its pleadings notifying the Court that the defendant identified in the complaint as "AOS Legal Technologies, Inc.," was in fact a domestic corporation, not a Japanese company. (Dkt. 15). On the same day, Document Operations sent the Texas Secretary of State a copy of the live complaint in this case and a Fed. R. Civ. P. 4 Summons form to be served on AOS Delaware at its New York office. (Dkt. 48-E at para. 8). The Texas Secretary of State later certified that, on June 25, 2020, it transmitted those documents—via certified mail—to AOS Delaware. (Dkt. 67 at Ex. F).

On June 23, 2020—just five days after Document Operations filed its notification to the Court regarding AOS Delaware—AOS Delaware filed a "Certificate of Dissolution" with the Delaware Secretary of State and refused to sign for the documents contained in the certified mail from the Texas Secretary of State. (Dkt. 48 at Exs. F, G, and H). On July 2, 2020, AOS Delaware notified the State of New York that it was now an "inactive" corporation in that state.[2] (Dkt. 48 at Ex. B). On July 7, 2020, AOS Delaware also notified the State of California that it had "surrendered" its active corporate status in that state. (Dkt. 48 at Ex. I).

On January 14, 2021, Document Operations again sent Stratton a copy of the summons, the live complaint, and a waiver of summons form via FedEx. (Dkt. 86-A at para. 3). On January 19, 2021, Alan Hersh emailed Newar on behalf of AOS and advised him that the law firm of Greenberg Traurig had received the letter but that AOS "would

---

[2] The record establishes that as of the date of its dissolution AOS Delaware (1) had been in existence over seventeen years, and (2) had been active in the State of New York for the previous seven years. (Dkt. 48 at Exs. A, B and D).

not waive service of process and has not authorized [Stratton] to accept service on their [sic] behalf." (Dkt. 86-A at para. 4). Hersh insisted that AOS be served in accordance with the Convention as a foreign corporation. (Dkt. 55 at p. 3).

It is undisputed that AOS has already received actual and timely notice of this lawsuit. In fact, as reflected in the transcript of the hearing held on January 8, 2021, AOS received both the notice of summons and the live complaint from its U.S. counsel, many, many months ago.

> THE COURT: [Y]ou received a copy of the complaint and the summons in this case. You personally received it, didn't you?
> MR. STRATTON: I did. He over-nighted it to me.
> THE COURT: Okay. You did not – you are telling me that you did not forward that information to your client and let your client know about this lawsuit or the fact that you received that complaint? Did you or didn't you?
> MR. STRATTON: Well, Judge, I think –
> THE COURT: It's a very simple question. You received it – the question is did you forward it on to your client? Yes or no? If you didn't, it's no. If you did, it's yes. There's no, you know, "Maybe. I could have forwarded it." You either forwarded it to your client or you didn't.
> MR. STRATTON: Judge, what I do with my client is attorney/client privilege.
> THE COURT: No, no, no. No, no. Did you forward it to your client, yes or no? If you are refusing to answer based on attorney/client privilege, state that now and we make a record and move on. Did you forward that document? I'm not asking what you told your client about it. I want to know did you physically forward the document to your client, yes or no?
> MR. STRATTON: Yes.

Incredibly, despite this admission, the parties are locked in mortal combat over the issue of whether AOS has been served and must respond to this lawsuit. This fight has been time consuming for the parties and has severely hampered the Court's efforts to timely move this case toward resolution. To reach the next level of this litigation and put this issue to rest once and for all, Document Operations seeks alternative service on AOS

via e-mail to AOS's U.S. counsel. (Dkt. 86 at pp 5-6). In other words, Document Operations wants AOS to stop with the gamesmanship, respond to this action under the Federal Rules of Civil Procedure and "Get over here!"[3]

The time has come. This fight ends now. It should have ended long ago.

In the pending motion, Document Operations seeks alternative service on AOS under Rule 4(f)(3) via service by email to AOS's U.S. counsel, Greenberg Traurig. (Dkt. 86 at p. 4). For the reasons discussed below, the Court finds that Document Operations' motion should be granted. The Court finds that AOS's arguments to the contrary are at best unmeritorious and, at worst, made in bad faith to thwart Document Operations' diligent attempts to move this action forward and to cause unnecessary expense and delay in the resolution of this lawsuit.

## II. LEGAL STANDARD

A court order directing alternative service of process on a foreign defendant must comply with: (1) the Federal Rules of Civil Procedure; (2) international agreements entered into by the United States and the relevant foreign country; and (3) the due process protections afforded by the United States Constitution. *Wsou Invs. LLC v. Oneplus Tech. (Shenzhen) Co.*, 6-20-CV-00952-ADA, 2021 WL 2870679, at *6 (W.D. Tex. July 8, 2021).

### A. Federal Rules of Civil Procedure

---

[3] *See Mortal Kombat*, WIKIPEDIA, https://en.wikipedia.org/wiki/Mortal_Kombat (last visited July 19, 2021). Some commentators consider Scorpion's "Get Over Here!" not only the most well-known line in the "Mortal Kombat" media franchise but in video game history.

Service on a corporation is governed by Rule 4(h) of the Federal Rules of Civil Procedure. Pursuant to this rule, service on a corporation located outside the United States may be accomplished in any manner prescribed by Rule 4(f) for serving an individual except for personal delivery under Rule (4)(f)(2)(C)(i). FED. R. CIV. P. 4(h)(2).

Rule 4(f) of the Federal Rules of Civil Procedure provides the means by which a plaintiff may serve an individual located outside of the United States. Under this rule, the Court has considerable discretion to authorize an alternative means of service as long as the method of service is not prohibited by international agreement. *See Rio Props. Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002); Fed. R. Civ. P. 4(f)(3). A plaintiff need not pursue other methods of service before requesting that the court authorize an alternative method under Rule 4(f)(3). Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary relief.' It is merely one means among several which enables service of process on an international defendant. *Rio Props. Inc.*, 284 F.3d at 1015.

**B.     The Hague Convention**

The Hague Convention is an international treaty governing the service abroad of foreign defendants. 20 U.S.T. 362, T.I.A.S. 6638, Art. 1. Both the United States and Japan are signatories to this treaty. Service of process on a foreign defendant in compliance with the Convention is mandatory only "if the method of serving process involves the transmittal of documents abroad." *Sheets v. Yamaha Motors Corp., U.S.A.*, 891 F.2d 533, 537 (5th Cir. 1990); *see Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707 (1988); *Terrestrial Comms LLC v. NEC Corp.*, 2020 WL 3270832, at *2 (citing *Brown v. China Integrated Energy, Inc.*, No. 11-2559 MMM, 285 F.R.D. 560,

564 (C.D. Cal. 2012)). If a foreign defendant can be served under state law without transmitting documents abroad, the Hague Convention does not apply. *Id*. The Hague Convention does not prohibit methods of service effected within the United States that are valid under state law or constitutional requirements of due process. *See Volkswagenwerk Aktiengesellschaft*, 486 U.S. at 707; *Wsou Invs. LLC.*, 2021 WL 2870679, at *2.

### C. Constitutional Due Process

Any method of alternate service authorized by the court must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Volkswagenwerk Aktiengesellschaft*, 486 U.S. at 705 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). In other words, the manner of service used must comply with due process. "Due process is satisfied when efforts at giving notice provide fundamental fairness by exhibiting a reasonable probability of actual notice." *Terrestrial Comms*, No. 6:19-CV-00597-ADA, 2020 WL 3270832, at *3 (citing *Mullane*, 339 U.S. at 317–18).

Because this lawsuit was filed in the Southern District of Texas, the requested alternative method of service is valid if it complies with the Texas long-arm statute. As courts have repeatedly held, the Texas long-arm statute reaches "as far as the federal constitutional requirements of due process will allow." *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996); *Guardian Royal Exch. Assurance, Ltd. v. Eng. China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991); *U-Anchor Adver. Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1997).

### III.   ANALYSIS

AOS argues that the Court should deny the pending motion because alternative service via email delivery of the summons and complaint to its U.S. counsel is prohibited by an international agreement—The Hague Convention. Specifically, AOS argues that the Convention prohibits the requested form of service because (1) service through the Convention is mandatory and AOS has an absolute right to insist on being served with process in accordance with the strict procedures of the Convention, (2) Document Operations has not first attempted service on AOS under the Convention, and (3) Japan has objected to service by mail on Japanese defendants under the Convention and therefore service by email is also prohibited. (Dkt. 88 pp. 11, 14–15). AOS asserts that any allegation that it has engaged in gamesmanship to prevent timely service is based on the erroneous conflation of AOS with an "irrelevant, dissolved domestic company," named AOS Delaware. (Dkt. 88 at pp. 3–5). The Court finds these arguments unpersuasive.

#### A.   Service Through the Convention Is Not Mandatory

As a Japanese corporation, AOS does not have an absolute right to insist on service of process through strict compliance with the Convention before it must answer this suit. "The mere fact that a foreign defendant resides in a country that is a signatory to the Convention … does not compel the conclusion that the Convention applies to service on those defendants." *Brown,* 285 F.R.D. at 564. Here, Document Operations asks the Court to authorize service on AOS by delivery of a copy of the summons and complaint to its U.S. counsel in compliance with Texas law. The requested service does not require

the transmittal of any documents outside of the United States and, as discussed below, it cannot be reasonably disputed that this service comports with due process. The Court finds that, because this alternative means to effectuate valid service on AOS does not require the transmittal of documents abroad by Document Operations, strict "compliance with the service requirements under the Hague Convention is not mandatory." *Terrestrial Comms*, 2020 WL 3270832, at *3; *Brown*, 285 F.R.D. at 564. Accordingly, AOS cannot use the Convention to avoid service.

> **B.    Attempted Service Through the Convention is Not a Prerequisite to Alternative Service.**

Next, AOS argues that the Court should not consider any request for alternative service under Rule 4(f) because Document Operations has not first attempted to serve AOS under the Convention. (Dkt. 88 at pp. 15–16). The Court finds this argument unpersuasive. Although "principles of comity encourage the court to insist, as a matter of discretion, that a plaintiff attempt to follow foreign law in its efforts to secure service of process upon defendant," *Midmark Corp. v. Janak Healthcare Priv. Ltd.*, No. 3:14-cv-088, 2014 WL 1764704, at *2 (S.D. Ohio May 1, 2014), it is well established that attempting service under the Hague Convention is not a prerequisite to requesting alternative service. *Terrestrial Comms*, 2020 WL 3270832, at *3 (citing *Affinity Labs of Tex., LLC v. Nissan N. Am. Inc.*, No. WA:13-CV-369, 2014 WL 11342502, at *1) (W.D. Tex. Jun. 2, 2014)); *see also Monco v. Zoltek Corp.,* No. 17-cv-6882, 2018 WL 3190817, at *4 (N.D. Ill. Apr. 24, 2018); *AngioDynamics, Inc. v. Biolitec, AG*, 780 F.3d 420, 429 (1st Cir. 2015); *Enovative Techs., LLC v. Leor,* 622 Fed. App'x 212, 214 (4th Cir. 2015);

*Rio Props., Inc.,* 284 F.3d at 1015, 1015; *Bazarian Int'l Fin. Assocs., L.L.C. v. Desarrollos Aerohotelco, C.A.,* 168 F. Supp. 3d 1, 16 (D. D.C. 2016).

### C. Japan's Objection to Mail Service under the Convention does not Bar the Alternative Service Request.

Finally, AOS argues that the pending motion should be denied because Japan has objected to service via mail on Japanese defendants under the Convention. AOS reasons that because of this objection, any form of alternative service that involves email would also violate the Convention. *Bazarian*, 168 F. Supp 3d at 17. The Court also finds this argument unpersuasive.

As noted above, the Convention does not apply where, as here, the method of serving process does not involve the transmittal of documents abroad. Furthermore, the Court can find no compelling reason to consider the Convention when determining whether email service within the United States is warranted in this case. The Convention does not affirmatively authorize, nor does it prohibit, service by email. *See Luxottica Grp. S.p.A. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A",* 391 F. Supp. 3d 816, 822 (N.D. Ill. 2019) ("The Convention . . . does not speak directly to service by email and other electronic means."); *Habas Sinai Ve Tibbi Gazlar Istihsal A.S. v. Int'l Tech. & Knowledge Co.,* No. 19-608, 2019 WL 7049504, at *3 (W.D. Pa. Dec. 23, 2019) (same); *Bazarian*, 168 F. Supp. 3d at 17 (same). In fact, where defendants have attempted to evade service of process, courts have found that the Convention does not prohibit service of process by email. *See Terrestrial Comms,* 2020 WL 3270832, at *4; *Affinity Labs of Tex.*, 2014 WL 11342502, at *4.

### D. Service on AOS's U.S. Counsel is Warranted under the Federal Rules of Civil Procedure and Comports with Due Process

Where, as here, there is evidence of an attorney-client relationship between a foreign defendant and domestic counsel, a common method of alternate service under Rule 4(f) is service of process on a defendant's United States based attorney. *See Wsou Invs. LLC*, 2021 WL 2870679, at *4. Alternative service is also warranted in this case to prevent further delay and needless cost to the parties in resolving this dispute.

"[C]ourts have frequently cited delays in service under the Hague Convention as supporting an order of alternative service under Rule 4(f)(3)." *GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 266 (S.D.N.Y. 2012) (ordering that service through a foreign residents counsel in the United States was a valid form of service); *Brown*, 285 F.R.D. at 562–66 (ordering alternative service and noting that service under the Hague Convention would take four to six months); *Ackerman v. Glob. Vehicles U.S.A., Inc.*, No. 4:11-CV-687RWS, 2011 WL 3847427, at *3–4 (E.D. Mo. Aug. 26, 2011) (authorizing service on defendant's counsel "so as to not further delay" the lawsuit); *The Knit With v. Knitting Fever, Inc.*, No. 08-4775, 2010 WL 4977944, at *4–5 (E.D. Pa. Dec. 7, 2010) (granting plaintiff leave to serve a defendant via counsel where Hague Convention service would take up to three months and plaintiff sought a waiver of service from the defendant before seeking leave to serve the defendant by alternative means); *LG Elecs., Inc. v. ASKO Appliances, Inc.*, No. 08-828, 2009 WL 1811098, at *4 (D. Del. June 23, 2009) (authorizing service on defendant's counsel "to prevent further delays in litigation"). Courts have also found that avoiding the additional expense of serving a defendant in a foreign country is a valid justification for granting an alternative method of

service. *Vinewood Capital, L.L.C. v. Al lslami*, CIV A 406-CV-316-Y, 2006 WL 3151535, at *2 (N.D. Tex. Nov. 2, 2006) (finding the plaintiff's attempt to serve the defendants through the Texas Secretary of State "was not an unreasonable effort to easily accomplish service and limit the costs associated with international service of process . . .").

This case has now been on file for over a year and the parties are *still* fighting over service of a summons and complaint and show no signs of stopping until one side or the other runs out of quarters to play. Despite having already received copies of the summons and complaint, AOS continues insist on service under the Convention apparently for no other reason than its belief that it can. AOS has not provided any compelling reason why Document Operations should be required to incur the additional cost and expense of providing AOS *with documents it already has.* Additional delay in proceeding forward with this lawsuit may also increase the potential harm to Document Operations as a result of AOS's alleged misconduct. According to the complaint, every day that passes with this case being unresolved, AOS is inflicting increasing damage on Document Operations and its goodwill by misusing it licensing agreement in other countries. Under these circumstances, alternative service is warranted.

Viewing the entire record in this case in gestalt, despite its explanations to the contrary, the Court also finds that AOS has attempted to frustrate service since the first hearing for injunctive relief was scheduled in this lawsuit. Particularly concerning is AOS's conduct in dissolving a corporation that would be easily amenable to service through the Texas Secretary of State at the same time Document Operations was

attempting service, in part to obtain injunctive relief. Under these circumstances, the Court finds that the requested alternative service of process via email on AOS' U.S. counsel is warranted under the Federal Rules of Civil Procedure.

The Court also finds that alternative service by email on AOS's U.S. counsel comports with due process. As noted above, it is undisputed that AOS has actual notice of the lawsuit and a copy of the summons and complaint it received from its counsel. In fact, AOS has had this information for over a year. Furthermore, AOS appears to be a sophisticated company that has subsidiaries or related companies in multiple countries, including until recently the United States. It has hired U.S. counsel to represent it in this case and is aware of its responsibilities to respond to this lawsuit. To date, AOS through its U.S. counsel has filed over a hundred pages of pleadings in this case and thousands of pages of discovery have already been exchanged between the parties to this litigation. Accordingly, the Court finds that for all the reasons stated above, the pending motion should be granted.

### E. AOS's Motion for Permissive Appeal is Denied

AOS seeks an order from the Court permitting it to file an interlocutory appeal of the Court order granting alternative service. The Court finds that, under the facts clearly established by the record in this case, the issue of whether to allow substituted service does not involve a controlling question of law as to which there is substantial ground for difference of opinion. The Court also finds that an appeal from its order would not materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b).

This motion is yet another attempt by AOS to delay the timely resolution of this lawsuit. Accordingly, the motion is denied.

## IV. CONCLUSION

For the reasons stated above, Document Operations' motion for alternative service is **GRANTED.** AOS's motion for permissive appeal is **DENIED**.

SIGNED at Houston, Texas, this 22nd day of July, 2021.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE